ESTATE OF QUINTARD PETERS COURTNEY, DECEASED, QUINTARD P. COURTNEY, JR., AND WILL ALLEN COURTNEY, CO-INDEPENDENT EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3984–73. Filed June 18, 1974.

*Richard Lee Brown,* for the petitioners.
*Kemble White,* for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a Federal estate tax of $5,690.03 against the petitioners. The issues for decision are whether the Estate of Quintard Peters Courtney is entitled to a deduction for either a claim against the estate under section 2053(a)(3), I.R.C. 1954,[1] or for a mortgage debt under section 2053(a)(4).

All of the facts have been stipulated and are found accordingly.

Petitioners' legal residence on June 1, 1973, the time of the filing of the petition in this case, was Fort Worth, Tex. Quintard P. Courtney, Sr., died in Fort Worth, Tex., on May 1, 1969. An estate tax return for the Estate of Quintard Peters Courtney was filed with the district director of internal revenue at Dallas, Tex., on August 3, 1970.

On April 22, 1964, Quintard P. Courtney, Sr., and his wife, Ethel A. Courtney, purchased a residence located at 6220 Genoa, Fort Worth, Tex., from Bill Eiland and Nancy M. Eiland. The Courtneys financed their purchase of the 6220 Genoa property by means of a $38,000 note payable to the First National Bank of Fort Worth and secured by a deed of trust on the 6220 Genoa property. On or about May 14, 1964, the Courtneys gave the 6220 Genoa property to their son, Will Allen Courtney, subject to the note and deed of trust in favor of the First National Bank of Fort Worth. Quintard P. Courtney, Sr., or Ethel A. Courtney has made all payments on the note to the First National Bank of Fort Worth. Payments after the death of Quintard P. Courtney, Sr., have been made by Ethel A. Courtney.

The 6220 Genoa property was not included as an asset in the Estate of Quintard P. Courtney, but half of the outstanding balance on the note payable to the First National Bank of Fort Worth and half of one payment thereon were deducted as debts owed by the estate. The principal amount due on the note on May 1, 1969, was $32,135.76 and the amount of the payment was $147.29. The First National Bank of Fort Worth has made no claim or demand against the Estate of Quintard P. Courtney for payment of the note.

After the death of Quintard P. Courtney the First National Bank of Fort Worth legally could have enforced payment of its note against the Estate of Quintard Peters Courtney, Ethel A. Courtney, or the 6220 Genoa property; and full payment could be obtained from the Estate of Quintard Peters Courtney, Ethel A. Courtney, or the 6220 Genoa property at any time.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless noted otherwise.

Respondent determined that the Estate of Quintard Peters Courtney was not entitled to deduct either as a claim against the estate or as a mortgage debt one-half of the amount of $32,283 representing the principal due and one payment on the note to the First National Bank of Fort Worth.

Under section 2053(a) the value of a taxable estate is determined by deducting from the gross estate certain items allowable by the law of the jurisdiction where the estate is administered. These items include, at paragraph (3), claims against the estate and, at paragraph (4), unpaid mortgages or indebtedness regarding property where the value of the decedent's interest in the property is included in the gross estate undiminished by the mortgage or indebtedness.

## I. *Claim Against the Estate*

The first and more difficult question is whether one-half of the note balance and payment thereon claimed as a deduction by the estate is allowable as a "claim against the estate" under section 2053(a)(3). The note was used to purchase the 6220 Genoa property which the decedent and his wife deeded by gift, subject to encumbrances, to their son 5 years before Quintard Peters Courtney died. The decedent and his wife were jointly and severally liable on the note and made all payments thereon during his lifetime. After his death, Ethel A. Courtney continued making payments on the note and no claim for payment has ever been presented to the estate by the holder of the note, the First National Bank of Fort Worth.

Petitioners contend that the mere existence of the legal right of the First National Bank of Fort Worth to enforce payment of its note against the Estate of Quintard Peters Courtney, and not the actual exercise thereof or the extinguishment of the debt by payment, constitutes a "claim against the estate" within the meaning of section 2053 (a)(3) and section 20.2053-4, Estate Tax Regs. Petitioners point out that, even at this late date, under Texas law the First National Bank of Fort Worth could enforce payment of its note as a valid claim against the Courtney estate. They assert that the fact that the claim has not been fully paid or enforced against the estate by the creditor should not bar allowance of a deduction where the claim consists of a mortgage debt owed by the decedent jointly and severally with his wife at the date of his death. They argue that the statute requires only that claims be *allowable* under local law, whereas respondent's regulations add that such claims must also be *enforceable* against the estate. We are urged to follow the District Court's decision in *Anna Cathcart* v. *Schwaner* (S.D. Ill. 1929, 15 A.F.T.R. 564), which held

that certain notes were "claims against the estate" under facts somewhat similar to those present here.

In *Cathcart*, the decedent gave three promissory notes to evidence his indebtedness upon 767.5 acres of land which he thereafter conveyed during his lifetime by a deed warranting against encumbrances to his daughter and her husband. The decedent always met the interest payments himself and continued to do so after execution and delivery of his warranty deed. There was no question as to the bona fides of the deed of conveyance, nor was there any clause in the deed requiring the grantees to assume and discharge the mortgage indebtedness or otherwise recognize it. The court concluded that there could be no doubt that the three notes, aggregating $53,000, secured by a mortgage on land, constituted an indebtedness due and owing at the time of the death of the decedent and would have been allowed as a claim against the estate if presented to the Probate Court. Furthermore, the facts in *Cathcart* show that the decedent intended to satisfy the indebtedness out of his own funds and save and keep harmless the grantees in his deed from any possible consequences of the lien. It concluded that, in determining the net taxable estate, the debt due and owing by the decedent was properly allowed as a deductible liability, even though the underlying property was not included as an asset in the gross estate.

Respondent emphasizes a different aspect of the section 2053(a)(3) claim asserted herein by petitioners. He asserts that no Federal estate tax deduction is allowable for a claim which has not been paid or will not be paid because the creditor fails to enforce payment, citing *Estate of Ethel M. DuVal*, 4 T.C. 722 (1945), affd. 152 F. 2d 103 (C.A. 9, 1945), certiorari denied 328 U.S. 838 (1946); *John Jacobs et al., Executors*, 34 B.T.A. 594 (1936); Rev. Rul. 60-247, 1960-2 C.B. 272. In effect, respondent looks to events occurring after the date of death to determine whether a claim is actually paid by the estate so that it is entitled to a deduction for the payment made. He notes that a claim without a claimant was not intended by Congress when it provided for allowance of claims as deductions from a gross estate. He concedes that in Texas claims against an estate are paid by an independent administrator without court approval, but stresses that, while "allowable" under local law, claims are not deductible under section 2053(a)(3) if a creditor fails to enforce payment against the estate. Since the First National Bank of Fort Worth has made no claim for payment on its note against the Courtney estate, respondent contends that no deduction for such a claim is allowable under section 2053 (a)(3).

We recognize that deductibility under section 2053(a)(3) is not conditioned on a claim's allowance by a local court or in a formal

probate proceeding, but rather depends upon its enforceability under local law. *Pitner* v. *United States*, 388 F. 2d 651 (C.A. 5, 1967) ; *Smyth* v. *Erickson*, 221 F. 2d 1 (C.A. 9, 1955). In one case neither the lack of allowance of the debt by a local court nor lack of payment of the debt by an estate was considered a bar to the deduction for a claim against the estate. *Commissioner* v. *Strauss*, 77 F. 2d 401, 405 (C.A. 7, 1935), reversing B.T.A. order on other issues 81 F. 2d 1016 (C.A. 7, 1936). Therefore, the Texas system for independent administration of estates outside of courts does not preclude a finding that the unmatured claim for payment on the note held by the First National Bank of Fort Worth is an "allowable" claim against the Courtney estate.

The facts herein indicate that the note was a personal obligation of Quintard Peters Courtney as comaker with his wife, Ethel A. Courtney, and that any claims based on the note were at best unmatured at his death, and during administration of his estate, since timely payments on the note were made regularly during this period. Certainly, if a claim for one-half the balance due on the note had been made by the First National Bank of Fort Worth, it would be allowed in full. See *John Parrott, Jr., et al., Executors*, 7 B.T.A. 134 (1927), affd. 30 F. 2d 792 (C.A. 9, 1929), certiorari denied 279 U.S. 870 (1929). In the *Parrott* case this Court held that where a brother and sister were jointly and severally liable on a mortgage given to secure their indebtedness on real estate, and the sister died and her estate paid the entire mortgage due, the executors were entitled to a deduction for the amount paid but must include as an asset a claim for reimbursement against the surviving brother for one-half of the amount paid on the debt. Likewise, since Quintard Peters Courtney was a comaker on the note, his estate is liable for only one-half the outstanding balance thereon and it was this amount that was due and owing when he died. See 2 Beveridge, Law of Federal Estate Taxation, sec. 13.09, p. 149 (1956).

The purpose of making deductions available under section 2053(a)(3) is to assure that a tax is imposed only on the net estate, i.e., on what actually passes in value from the dead to the living. *Estate of Frank G. Hagmann*, 60 T.C. 465 (1973), affirmed per curiam 492 F. 2d 796 (C.A. 5, 1974) ; *John Jacobs et al., Executors*, 34 B.T.A. 594, 597 (1936).

Claims which Congress intended to be deducted for Federal estate tax purposes were claims presented and allowed or otherwise determined as valid against an estate and actually paid or to be paid. *Estate of Reginald L. Taylor*, 39 T.C. 371, 377 (1962) ; *Estate of William P. Metcalf*, 7 T.C. 153 (1946), affd. (C.A. 6, 1947) ; *John Jacobs et al., Executors*, 34 B.T.A. 594 (1936) ; *Jacob A. Jacobs et al.*, 9 B.T.A. 636 (1927), affd. 34 F. 2d 233 (C.A. 8, 1929), certiorari denied 280 U.S. 603 (1929).

In a number of early cases the phrase "claims against the estate" was interpreted to mean demands or claims of a pecuniary nature which could have been enforced against the decedent during his lifetime. *Oreon E. Scott, et al., Executors and Trustees*, 25 B.T.A. 131 (1931), modified and affirmed on other issues 69 F. 2d 444 (C.A. 8, 1934); *Jacobs, et al.* v. *Commissioner*, 34 F. 2d 233 (C.A. 8, 1929); *Isabella N. Skinker et al., Executrices*, 13 B.T.A. 846 (1928). Clearly the note in question was of a pecuniary nature and enforceable against Quintard Peters Courtney during his lifetime. It has been recognized that when a decedent is personally liable to a bank for money he borrowed, the claim for the debt against his estate is deductible in full. *Estate of Charles H. Lay*, 40 B.T.A. 522, 528 (1939). See also sec. 20.2053–4, Estate Tax Regs.

However, the difficulty arises where, as here, no claim whatsoever has been presented by holder of the note to the estate, no payment has ever been made on the note by the estate, and the estate subsequently claims a deduction equal to the "unpresented" claim. We have held that a claim is an assertion of right and if there be no assertion of the right or if the right to assert has been abandoned, there is no "claim." *Estate of Ethel M. DuVal*, 4 T.C. 722 (1945), affd. 152 F. 2d 103 (C.A. 9, 1945), certiorari denied 328 U.S. 838 (1946).

In certain cases events occurring after the decedent's death must be considered in determining the deductibility of claims under section 2053(a)(3). See *Estate of Frank G. Hagmann, supra*, and the cases cited therein. As we stated in *Estate of Mary Redding Shedd*, 37 T.C. 394, 397 (1961), affd. 320 F. 2d 638 (C.A. 9, 1963):

if the liability of the estate was uncertain because of the potential nature of the claim, or because the estate was disputing its liability or because no claim was actually presented, the courts * * * felt justified in looking to subsequent happenings to ascertain how much, in fact, the estate would be required to pay.

See also *Estate of Reginald L. Taylor*, 39 T.C. 371 (1962). Thus, even though an estate may be fully liable to pay an amount due and owing by the decedent at his date of death, if such a liability is thereafter waived by the claimant and does not thereafter exist, no deduction may be taken. *Estate of Ethel M. DuVal, supra; John Jacobs et al., Executors*, 34 B.T.A. 594 (1936); *Schiffman* v. *United States*, 51 F. Supp. 728 (Ct. Cl. 1943). Similarly, if such an estate liability is reduced in amount, only the lesser amount will be allowed as a deductible claim against the estate. *Estate of William P. Metcalf, supra*.

While the decedent was personally liable on the note, along with his wife, we are not persuaded that the liability is the basis for a deduction equal to one-half of the value of the note as a claim against his estate in view of the events which occurred after his death.

Petitioners would have us hold that an unpaid and unenforced claim is deductible by an estate because, though unmatured, it is a potentially valid claim against the estate. We cannot agree. Nor is their reliance upon the case of *Anna Cathcart* v. *Schwaner, supra*, helpful. There the mortgage debt involved no comaker and the debt was satisfiable only by the decedent's estate. Moreover, the property in *Cathcart* did not pass by deed subject to encumbrances to the donee-grantees. The facts of the instant case are clearly distinguishable from *Cathcart*. Here Quintard Peters Courtney cosigned the mortgage note with his wife, deeded the Genoa property to his son, Will Allen Courtney, subject to the note and a deed of trust in favor of the First National Bank of Fort Worth, and the debt due and owing on the note could be satisfied at all times from his estate, Ethel A. Courtney, or the Genoa property. On these facts we cannot conclude, as the court in *Cathcart* did, that Quintard Peters Courtney intended to satisfy the indebtedness out of his own funds and keep his son harmless from any consequences of the lien on the Genoa property.

In our opinion the events which occurred after Quintard Peters Courtney's death also indicate that no claim has actually been paid by the estate, and there is no evidence showing that any claim will be paid by the Courtney estate in the future, especially if Ethel A. Courtney continues making regular payments on the note. What we have here is simply an unmatured, potential claim without an existing claimant. We think Congress did not have this situation in mind when it provided for the allowance of deductible claims under section 2053(a)(3) from the value of a decedent's gross estate. Accordingly, we hold that the petitioners are not entitled to a deduction for a debt owed by the estate where the creditor does not enforce its claim against the estate.

## II. *Mortgage Indebtedness*

The stipulated facts indicate that the value of the 6220 Genoa property was not included as an asset in the Estate of Quintard Peters Courtney and that he and his wife had deeded the property to their son, Will Allen Courtney, in 1964, subject to any encumbrances thereon. However, a deduction was claimed on the Federal estate tax return for one-half of the outstanding balance on the note used to purchase the Genoa property and for one-half of a payment thereon.

Respondent contends that a Federal estate tax deduction is not allowable for a mortgage debt where the value of the mortgaged property is not included in the estate. We agree.

Section 2053(a)(4) provides that a deduction is allowable for the amount of unpaid mortgage on property where the value of the decedent's interest therein is included in the value of the gross estate.

And section 20.2053–7, Estate Tax Regs., provides that a deduction is allowed if the value of the property, undiminished by the amount of the mortgage or indebtedness, is included in the value of the gross estate.

The applicable case law supports respondent's position. See *Estate of Theresa Seagrist*, 42 B.T.A. 1159 (1940) ; *Oreon E. Scott et al., Executors and Trustees*, 25 B.T.A. 131 (1931), modified and affirmed on other issues 69 F. 2d 444 (C.A. 8, 1934) ; *Estate of Charles H. Lay*, 40 B.T.A. 522 (1939) ; *Schiffman* v. *United States*, 51 F. Supp. 728 (Ct. Cl. 1943).

Petitioners ask that the estate be allowed to deduct a debt that it will not have to pay against property that is not its asset. The deduction under section 2053(a)(4) must be denied because the value of the property which secures the debt has not been included in the estate.

*Decision will be entered for the respondent.*