Estate of Angus O. Swink, Virginia Trust Company and Frances H. Swink, Executors v. Commissioner.
Estate of Angus O. Swink, Virginia Trust Co. v. Commissioner
Docket No. 6248.
United States Tax Court
1945 Tax Ct. Memo LEXIS 198; 4 T.C.M. (CCH) 518; T.C.M. (RIA) 45169; May 15, 1945
James Mullen, Esq., for the petitioners. Elmer L. Corbin, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding involves an estate tax deficiency of $68,042.24. The questions in issue are whether the respondent erroneously disallowed the deduction from the gross estate of (1) a payment of $132,275.14 which the executors made to purchase an annuity to provide alimony payments for decedent's divorced wife; (2) a payment of $15,000 to purchase a home for her; and (3) a payment of $25,000 which decedent had agreed to pay his divorced wife in settlement of her suit against his wife for alienation of affections. [The Facts] *199 The facts are stipulated. The decedent died a resident of Richmond, Virginia. An estate tax return was filed with the collector of internal revenue for the district of Virginia. Decedent and his former wife, Mildred J. Swink, were divorced under a decree of a Nevada court on September 9, 1940. As a part of its decree the court adopted a property settlement agreement previously entered into by the parties. The agreement provided that decedent should pay alimony to Mildred Swink of $6,000 per year for his life and that upon his death, if he should predecease her, his executors should purchase out of the assets of his estate an annuity that would pay her $6,000 per year for life. It was further provided that within three years from the date of the agreement decedent would purchase for her a residence costing not less than $15,000. As a condition to the agreement both parties waived all rights of dower, curtesy, or other rights growing out of the marital relationship. Prior to December 10, 1940, petitioner married Frances H. Swink. On that date Mildred Swink instituted suit against Frances Swink in the Law & Equity Court of the City of Richmond, Va., for $150,000 damages for alienation *200 of affections. On January 8, 1941, Mildred Swink agreed to dismiss the suit in consideration of the promise of decedent to secure for her benefit a policy of insurance on his life which at his death would pay her $25,000 cash. The suit was then dismissed with prejudice. The decedent died testate January 26, 1942. The Virginia Trust Co. and Frances H. Swink were appointed executors under his will. The proceeds of the insurance policy for the benefit of Mildred Swink having been paid into decedent's gross estate, the executors paid her $25,000 as agreed upon in the settlement of her suit against Frances Swink. They also paid her $15,000 to buy a home and purchased an annuity that would pay her $6,000 per year for life at a cost of $132,275.14, as decedent had agreed. The above expenditures were all reported in the accounts filed by the executors and were approved by the Commissioner of Accounts and the Chancery Court of Richmond. All of such amounts were deducted in the estate tax return from the value of the gross estate as valid claims against the estate. The respondent disallowed the deductions in his deficiency notice. Our question is whether the amounts in dispute were paid *201 in satisfaction of claims founded upon "a promise or agreement" within the meaning of section 812 (b) (3), Internal Revenue Code, and if so whether they were contracted bona fide for an adequate and full consideration in money or money's worth. The material provisions of the statute are set out in the margin. [1]
*202 Petitioners' contentions are that the payments made for the alimony annuities and a home for the divorced wife were founded not upon a "promise or agreement" but upon the decree of the court granting the divorce and that the deductions allowable under the statute are not subject to the "money or money's worth" limitation imposed by section 812 (b) (3). As to these items petitioners' contentions are sustained upon authority of the following named cases: Edythe C. Young. Executrix, 39 B.T.A. 230; Estate of Silas B. Mason, 43 B.T.A. 813; Estate of Francis Browne Grinnell, 44 B.T.A. 1286; affd. on this point (C.C.A., 1st Cir.), 128 Fed. (2d) 618; Helvering v. United States Trust Co., 111 Fed. (2d) 576; certiorari denied, 311 U.S. 678; Fleming v. Yoke, 53 Fed. Supp. 552; affd., (C.C.A., 4th Cir.), 145 Fed. (2d) 472. The holding in those cases is that where a predivorce settlement agreement has been approved and adopted by the court in its divorce decree the obligations under the agreement are thereafter to be regarded as founded not upon the agreement but upon the decree, and are *203 deductible as claims against the estate. The $25,000 item which the executors paid out of the insurance on decedent's life pursuant to the agreement which decedent made in settlement of his former wife's alienation suit against his former wife's alienation suit against his present wife stands in a different category. Petitioners concede that as to that item the claim was founded upon a promise or agreement of the decedent. They contend, however, that it was an enforceable agreement contracted bona fide and for an adequate and full consideration in money or money's worth, within the meaning of the statute. Granting, as petitioners argue, that the forbearance to prosecute the suit constituted an adequate consideration for decedent's promise and that the contract was legally enforceable against his estate, we do not think the claim was of the kind for which the statute permits a deduction. In Edythe C. Young, Executrix, supra, the payment by the estate was in compromise of the claim of a divorced wife for alimony. We pointed out in our opinion that while there was a predivorce agreement as to the payment of alimony "the wife's right to alimony grows out of the legal *204 duty of the husband to support her and not out of a promise or agreement." In the instant case decedent's obligation as to the payment of the $25,000 grew out of and rested solely upon his contract. The court in which the suit was instituted did not determine, nor is it contended, that under the laws of Virginia decedent had any personal liability, other than his contractual one, for such payment. As to him it was purely a voluntary obligation which he assumed to protect his wife, and indirectly himself, against the unfavorable publicity which would result from the prosecution of the suit. Proof is entirely lacking to support petitioners' contention that the agreement was contracted "for an adequate and full consideration in money or money's worth." The stipulation of facts, as far as material to this question, reads as follows: 6. Thereafter, to-wit: on December 10, 1940, Mildred J. Swink sued Frances H. Swink for $150,000 for alienation of affections. Frances H. Swink did not have any considerable amount of money or other property. Pursuant to the existing practice prevailing in Virginia, the suit was commenced in the Law & Equity Court of the City of Richmond, Part, II, by issuing *205 a writ of trespass on the case. This showed that the action sounded in tort but disclosed nothing more as to the nature of the controversy. Under the Virginia practice the plaintiff had thirty days in which to file a declaration and Angus O. Swink had thirty days in which he could, by giving in to the plaintiff's demands, keep the nature of the controversy from becoming publicly known. He was a prominent citizen of Richmond. Virginia, his main occupation was managing a life insurance agency. Within the thirty days, to-wit: on January 8, 1941, Angus O. Swink, Mildred J. Swink and Frances Hart Swink entered into an agreement * * * in which Angus O. Swink promised to pay the plaintiff $25,000.00 in cash in consideration of which promise she dismissed the suit. The declaration was never filed and the only public record of the disposition of the suit is the following entry made January 20, 1941 in the Clerk's Rule Book: "1941 2nd January Rules - Case dismissed by directions of plaintiff's attorney." Said $25,000 was to be paid only after the death of Angus O. Swink, and he agreed to and did secure the payment of said sum by insuring his life for the benefit of Mildred J. Swink. On his death *206 the insurance was collected and the $25,000 paid to Mildred J. Swink out of it. The entire amount of the insurance was carried into gross estate. The stipulation leaves it to conjecture as to what financial loss decedent might have suffered in his insurance business had he not settled the suit. Whatever that settlement may have brought to him in the way of peace of mind and marital tranquility we certainly can not find on the stipulated facts that he received an adequate and full consideration in money or money's worth. We think that the respondent did not err in disallowing the deduction of the $25,000 item. Decision will be entered under Rule 50. Footnotes
1. SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, * * * by deducting from the value of the gross estate - * * * * *
(b) Expenses, Losses, Indebtedness, and Taxes. - Such amounts - * * * * *
(3) for claims against the estate. * * * * *
as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered, * * * The deduction herein allowed in the case of claims against the estate, * * * shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * * For the purposes of this subchapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."↩