COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

ESTATE of Carlton A. SHIVELY, Deceased, John E. D. Grunow, Administrator, Respondent.

No. 202, Docket 25922.

United States Court of Appeals
Second Circuit.

Argued Dec. 3, 1959.

Decided March 25, 1960.

Moore, Circuit Judge, dissented.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Morton K. Rothschild, Atty. Dept. of Justice, Washington, D. C., for petitioner.

John W. Boyd, Boyd & Anstett, Westport, Conn., for respondent.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

All the pertinent facts bearing upon the issue before us have been stipulated. Decedent intestate, Carlton A. Shively, was a resident of Connecticut at the time of his death. He had married one Marie Wilson on March 26, 1927. A son was born of this marriage. On May 7, 1930 Shively and his wife entered into a separation agreement which provided, *inter alia*, that after the son attained the age of twenty-one Shively would pay Marie $40 per week until her death or remarriage, and it was further provided that these payments would be a charge upon Shively's estate should he predecease his wife. On August 28, 1930 a court of the State of Nevada entered a decree of divorce incorporating the terms of the above-described separation agreement. Shively's death occurred on July 8, 1952. The son had become twenty-one before his father's death, Marie had not remarried, and the weekly payments had been acknowledged as due by Shively and were being currently paid. After Shively's death his administrator continued to make these weekly payments until June 1953, when Mrs. Shively remarried. In the estate tax return, filed on July 28, 1953, decedent's administrator sought a

deduction under Section 812(b) (3), 26 U.S.C.A. (I.R.C.1939) § 812(b) (3), of $27,058.30, the stipulated actuarial present value computed as of the time of Shively's death of Mrs. Shively's right to future weekly payments. Before the Tax Court, and before us on appeal, the Commissioner has contended that the allowable deduction is limited to the total of the weekly payments actually paid to Mrs. Shively during the period the estate was in probate and prior to her remarriage. This amount is $2,079.96. The Tax Court in an unreported decision permitted the administrator the full deduction he sought, and the Commissioner has petitioned for review.

For the purpose of determining the value of decedent's net estate we must decide what effect the events that occurred here subsequent to decedent's death and prior to the filing of the estate tax return have had upon the amount of permissible deduction from the value of decedent's gross estate under Section 812(b) (3)[1] of the 1939 Internal Revenue Code, as amended.

Respondent concedes that as to other deductible items under 812(b), namely funeral and administration expenses, events subsequent to the decedent's death determine the amount of the permissible deduction. Nevertheless, respondent argues that "claims against the estate" should be treated differently in accordance with a general rule that, absent a clear congressional intent to the contrary, not only the value of the gross estate but also that of the net estate are to be determined as of the date of the decedent's death. See Ithaca Trust Co. v.

United States, 1929, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647. Hence respondent further concludes that since the Commissioner concedes that at the time of Shively's death the present value of Mrs. Shively's contingent claim against the estate could be actuarially determined with reasonable accuracy, see C. I. R. v. Maresi, 2 Cir., 1946, 156 F.2d 929, 931–932, the rule of Ithaca Trust, supra, should here operate to preclude consideration of any events subsequent to Shively's death.

█ Section 812(b) permits deduction only of those claims against the estate " * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered." In the Connecticut probate proceedings Mrs. Shively did not present a claim for the present value of her right to her continuing weekly support payments, i. e., the sum the respondent administrator seeks to have allowed under 812(b). Furthermore, it is conceded that under Connecticut law if she had received no support payments for the period subsequent to Shively's death and had been forced to prove her claim against the estate she would have been limited at the time the estate tax return was filed to payments due her prior to her remarriage— the amount to which the Commissioner here seeks to limit the deduction. Accordingly no greater amount than the sum of these payments actually paid can be said to be "allowed by the laws" of Connecticut.

C. I. R. v. Strauss, 7 Cir., 1935, 77 F.2d 401, 405; Smyth v. Erickson, 9 Cir., 1955, 221 F.2d 1, 3, and Winer v. United States, D.C.S.D.N.Y.1957, 153 F.

---

1. Section 812(b), in pertinent part, reads as follows:

"§ 812. Net estate

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

* * * * *

"(b) Expenses, losses, indebtedness, and taxes. Such amounts—
"(1) for funeral expenses,
"(2) for administration expenses,
"(3) for claims against the estate,

* * * * *

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered * * *."

Supp. 941, stand for the proposition that deductions under Section 812(b) (3) are to be determined without reference to events occurring subsequent to the decedent's death. These cases state that subsequent events are to be ignored even when they render the claim entirely unenforceable in the probate proceeding settling the estate. We disagree with the reasoning of these cases, for we are of the opinion that the rule they announce is incompatible with the purpose Section 812(b) is intended to serve.

■ Section 812 is entitled "Net Estate." Its purpose is to define that portion of the property of a decedent that is subject to estate tax, and in so doing it eliminates from estate taxation those portions of the decedent's gross estate that do not pass by way of gift taking effect at death, and those portions that, although they do so pass, pass by way of tax-exempt gift. See Kahn v. United States, D.C.S.D.N.Y.1937, 20 F.Supp. 312 for an admirable statement of this principle. Obviously this purpose would not be served if a deduction were permitted for claims against an estate which, though having vitality as of date of death, could never be enforced as of the date the estate tax return is filed. The property which might have been subject to such a claim were it enforceable is now certain to pass by way of gift taking effect at death. To permit an estate such a deduction under these circumstances would be to prefer fiction to reality and would defeat the clear purpose of Section 812. We hold that where, prior to the date on which the estate tax return is filed, the total amount of a claim against the estate is clearly established under state law, the estate may obtain under Section 812(b) (3) no greater deduction than the established sum, irrespective of whether this amount is established through events occurring before or after the decedent's death. We believe our decision is in accord with the following cases: Du Val's Estate v. C. I. R., 9 Cir., 1945, 152 F.2d 103, 104, certiorari de-

nied 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1613; C. I. R. v. State Street Trust Co., 1 Cir., 1942, 128 F.2d 618, 621–622, 142 A.L.R. 943; Buck v. Helvering, 9 Cir., 1934, 73 F.2d 760, 762–763; Jacobs v. C. I. R., 8 Cir., 1929, 34 F.2d 233, certiorari denied Jacobs v. Lucas, 287 U.S. 603, 50 S.Ct. 85, 74 L.Ed. 647; Smith v. United States, D.C.D.Mass.1936, 16 F.Supp. 397, 402–403, affirmed sub nom. United States v. Nichols, 1 Cir., 1937, 92 F.2d 704; Estate of Metcalf, 1946, 7 T.C. 153, affirmed 6 Cir. May 5, 1947 (unreported).

Reversed.

MOORE, Circuit Judge (dissenting).

I dissent because in my opinion the decision of the majority is directly contrary to the law as enunciated by the Supreme Court in Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 and also opposed to long-recognized principles of estate valuation.

The decedent died on July 8, 1952, at which time his estate was burdened with an obligation to pay his ex-wife $40 a week until her death or remarriage. Based upon her life expectancy this obligation required $27,058.30 to meet it. As of the date of death the decedent's estate was worth $27,058.30 less than its value would have been had the obligation imposed by the separation agreement and divorce decree not survived decedent's death. The Commissioner disallowed the deduction; the Tax Court allowed it primarily on the authority of the Ithaca Trust Co. decision and Estate of Pompeo M. Maresi, 6 T.C. 582, affirmed 2 Cir., 1946, 156 F.2d 929. In disallowing the deduction, the Commissioner apparently and the majority here rely upon the fortuitous circumstances that the estate tax return was not filed until July 28, 1953 and Mrs. Shively had remarried in June 1953. Therefore my colleagues say in effect: why resort to statistical probabilities when the facts are known, Mrs.

Shively actually received $2,079.96 (the $40 weekly payments) from the estate; remarriage terminated the obligation; therefore, no further claim can be made. The word "fortuitous" is used because had the tax return been filed and audited prior to June 1953, there would have been no basis to challenge the actuarially computed deduction. The same result would have obtained had Mrs. Shively not remarried for a few years after final audit. Thus only in the event that the courts by decision in effect enact a tax statute providing that in any estate in which the determination of values depends upon future contingencies, such estate shall be reopened for purposes of recomputation of estate taxes upon the actual happening of the contingency, can the tax ever be calculated on known facts related back to the date of death.

I had assumed the law, at least since 1929, to have been clear and definite in its relation to the problem here presented. In Ithaca Trust Co., supra, the decedent gave his estate to his wife for life, the residue to charities. The value of the taxable net estate could only be computed after ascertaining the value of the life estate because "as those gifts were subject to the life estate of the widow, of course their value was diminished by the postponement that would last while the widow lived" (279 U.S. at page 154, 49 S.Ct. at page 291). It so happened there, as here, that the widow died before the period for filing the return had expired. The legal question was identical, namely, "whether the amount of the diminution, that is, the length of the postponement, is to be determined by the event as it turned out, of the widow's death within six months, or by mortality tables showing the probabilities as they stood on the day when the testator died" (279 U.S. at page 155, 49 S.Ct. at page 291). Mr. Justice Holmes, writing the opinion, had the initial reaction (as almost all would) that "The first impression is that it is absurd to resort to statistical probabilities when you know the fact" (279 U.S. at page 155,

49 S.Ct. at page 291). "But [he continued] this is due to inaccurate thinking" because "The estate so far as may be is settled as of the date of the testator's death" (279 U.S. at page 155, 49 S.Ct. at page 291). He, therefore, concluded that "Tempting as it is to correct uncertain probabilities by the now certain fact, we are of the opinion that it cannot be done, but that the value of the wife's life interest must be estimated by the mortality tables" (279 U.S. at page 155, 49 S.Ct. at page 292).

Had the law, as expounded by the majority here, been applied, the Supreme Court would have valued the widow's life interest on the basis of her actual life span (six months). Though tempted it decided otherwise. And wisely so because otherwise there could be no finality in estate administration. Since Mr. Justice Holmes and his brethren on the Supreme Court, after fully recognizing the problem, were able to resist temptation, fortified by this knowledge and support, and in contrast to my more yielding colleagues, I believe that the principles of the Ithaca Trust case remain sound law. In the field of estate tax law it is particularly important that there be as much certainty as possible and that precedents be followed instead of overturned. Wills and trusts are drafted and estates are administered in reliance upon these precedents. They should be honored.

The argument made that section 812 (b) permits deduction only of claims allowed by the laws of the jurisdiction under which the estate is being administered (Connecticut) is wholly irrelevant to the problem before us. The widow was under no duty to present a claim in the Connecticut probate proceeding. Her rights were fixed before the decedent's death by contract and decree. The only question was how much should the administrator deduct to fulfill that commitment. Mortality tables indicated $27,-058.30. The widow was not forced to prove her claim for the number of weeks

between decedent's death and her remarriage. It was then currently being met.

"Deductibility is not conditioned on a claim's allowance by a local court, but rather upon its enforceability under local law" (Smyth v. Erickson, 9 Cir., 1955, 221 F.2d 1, 3). No suggestion is made by the government that the estate's obligation was not enforceable in Connecticut. As pointed out in the Smyth case, supra, "The use of the term 'allowed' in section 812(b) (3) is not to be construed as meaning that unless a claim against the estate has been allowed by the state court no deduction therefor will be permitted" (at page 3). The majority in effect concedes that the obligation had "vitality as of date of death" but substitutes the uncertain date of the filing of the return as the determinative date for a re-examination as to vitality. Furthermore, I am at a loss to understand the majority's conclusion that "We hold that where, prior to the date on which the estate tax return is filed, the total amount of a claim against the estate is clearly established under state law, the estate may obtain under Section 812(b) (3) no greater deduction than the established sum, irrespective of whether this amount is established through events occurring before or after the decedent's death." There is nothing whatsoever in the record that a claim for $2,079.96 or any other amount was "established under state law." Nor is there any basis in law for the proposition that the value of an obligation created by contract and decree during lifetime may upon death be established by "events occurring before or after the decedent's death." Certainly the cases cited in support of such a principle do not so hold.

For these reasons I would affirm the decision of the Tax Court.